IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL S. MAPES, MILTON PETERSEN IV, BRIAN LEICHNER, DAVID MOHR and DAVID STADING, | ) ) ) ) ) | Civil No. 8:07cv77 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| WELLINGTON CAPITAL GROUP, INC., | ) ) | |
| Defendant. | ) | |

Defendant, Wellington Capital Group, Inc. ("Wellington"), hereby respectfully submits its Brief in Opposition to Plaintiffs' Motion for Summary Judgment.

## STATEMENT OF UNCONTROVERTED FACTS

1. Plaintiffs/Counter-Defendants Michael S. Mapes ("Mapes"), Milton Petersen IV ("Petersen"), Brian Leichner ("Leichner"), David Mohr ("Mohr") and David Stading ("Stading"), at all times relevant hereto, solely owned all the capital stock of Alliance Compensation Benefits Group, Inc., the Alliance Group, Inc., Alliance Worksite, and Alliance Worldwide, Inc. (herein collectively "Alliance"). See Filing No. 11, ¶7, Filing No. 16, ¶7).

2. On July 13, 2006, Plaintiffs/Counter-Defendants sold all of their capital stock in Alliance to Wellington. See Filing No. 72, p.4, ¶3; Filing No. 11, ¶8. Wellington and Plaintiffs/Counter-Defendants entered into an Agreement for Purchase and Sale of Common Stock ("Stock Agreement"). See Filing No. 11, Exhibit "H"; Filing No. 16, ¶8.

3. Wellington and Plaintiffs/Counter-Defendants also entered into a Security and Pledge Agreement ("Pledge Agreement") dated July 13, 2006. See Filing No. 1, Exhibit "A"; Filing No. 11, ¶9; Filing No. 16, ¶9.

4.      The terms of the Stock Agreement and Pledge Agreement provided that Wellington would purchase Alliance's common stock for $4,500,000, half of which was to be paid at the time of closing in July of 2006, the other half of which was secured by promissory notes held by Plaintiffs/Counter-Defendants, payable in 24 monthly installments commencing January 9, 2007 and continuing on the 9th day of each month thereafter until paid.  See Filing No. 1, Exhibits "B"-"F" and Exhibit "A", p.1 at ¶(A); Filing No. 11, ¶8 and Exhibit "H" at p. 10 of 53, ¶2(b).

5.      Paragraph 9(f)(iii) of the Stock Agreement provides in party that the buyer's sole and exclusive remedy for any indemnified claim asserted pursuant to Section 9(b) of the Stock Agreement shall be to offset the amount owed by Sellers. See Filing No. 11, Exhibit "H" at p. 44 of 53, ¶9(f)(iii).

6.      Wellington paid to Plaintiffs/Counter-Defendants fifty percent of the purchase price, or 2.5 million dollars ($2,250,000.00), in cash by wire transfer at the time of closing in July of 2006.  See Filing No. 1, ¶12; Filing No. 11, ¶10; Filing No. 72, p. 5, ¶9.

7.      Exhibits "A" and "H" attached to Filing Nos. 1 and 11 also evidence that Plaintiffs/Counter-Defendants made various representations and warranties to Wellington regarding Alliance, including but not limited to Alliance's gross revenues and net profits thereon.  See Filing No. 11, Exhibit "H", p. 31 of 53, ¶(v).

8.      At the time of the Alliance closing in July of 2006, Frank Amodeo was the sole officer and director of Wellington.  See Defendant's Index of Evidence in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1A", Stollenwork Deposition, 30:19-31:4; 32:3-6.  Frank Amodeo signed the Pledge Agreement, Stock

Agreement, and the promissory notes referenced above, each on behalf of Wellington. See Filing No. 1, Exhibits "A" through "F"; Filing No. 11, Exhibit "H"; Defendant's Index of Evidence in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1A", Stollenwork Deposition, 47:1-4.

9. Wellington/Mirabilis[1] management operated Alliance from July 13, 2006 though February of 2007. See Defendant's Index of Evidence in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1A", Stollenwork Deposition, 124:17-21.

10. Wellington's January, 2007 payment pursuant to the Pledge Agreement was paid to Plaintiffs/Counter-Defendants; Wellington however, was unable to make its February 2007 payment pursuant to the Pledge Agreement and has asserted various counterclaims against Plaintiffs/Counter-Defendants arising out of such inability to make subsequent payments. See Filing No. 11, ¶17; Filing No. 16, ¶17.

11. The Pledge Agreement provides in part that, upon default, all rights of the buyer to exercise voting or consensual rights of the collateral shall cease and become vested in the sellers who shall have sole rights to vote, receive dividends or cash payments without notice to the sellers, and shall have all rights under the agreement by statute or law, including the right to declare the balance immediately due and payable, to peaceably remove all the collateral from the buyer, to remove the buyer from the premises, and to have custody and control of the premises. See Filing No. 1, Exhibit "A", ¶11. Paragraph 12 of the Pledge Agreement provides that all of the sellers' rights and remedies are cumulative and may be exercised singularly or concurrently. See *Id.* at ¶12.

---

[1] Mirabilis Ventures, Inc. is affiliated with Wellington and worked closely with Wellington with regard to the transactions and agreements at issue in this case. Defendant's Index of Evidence in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1A", Stollenwerk deposition, 54:16-25; 55:1-23.

12. On or about the 15th day of February, 2007, Plaintiffs/Counter-Defendants entered the facilities maintained by Alliance, removed Wellington/Mirabilis' management team, and replaced them with their own, newly elected board of directors and officers. See Filing No. 11, ¶43. Plaintiffs/Counter-Defendants subsequently conducted a foreclosure sale of Alliances' stock. Filing No. 73, Exhibit 1D.

13. Plaintiffs filed the instant action February 19, 2007, alleging causes of action for breach of contract and declaratory judgment. See Filing No. 1.

14. Wellington filed its Answer and Counterclaim on April 18, 2007, alleging causes of action for breach of contract, tortious interference with a business relationship, breach of duty of good faith and fair dealing, fraud, conversion, rescission, and declaratory relief. See Filing No. 11. As a result of Plaintiffs' conduct as alleged by Wellington in its counterclaims, it has alleged that it is entitled to certain indemnities, including offset, among other remedies. See *Id.* at ¶22, ¶45(a), ¶53.

18. Plaintiffs have now moved for summary judgment in their favor on their claims for breach of contract and declaratory judgment, and against Wellington on each of Wellington's counterclaims asserted against Plaintiffs. See Filing Nos. 71-73.

## SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56(c) requires "the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that

the record does not disclose a genuine dispute on a material fact." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op.,* 838 F.2d 268, 273 (8th Cir.1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. *Celotex,* 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." *Hass v. Weiner,* 765 F.2d 123, 124 (8th Cir.1985). See also *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 209 (8th Cir.1976) citing *Windsor v. Bethesda Gen. Hosp.,* 523 F.2d 891, 893 n. 5 (8th Cir.1975) ("[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances.")

In ruling on a motion for summary judgment, this Court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan,* 864 F.2d 622, 624 (8th Cir.1989). The court does not weigh the evidence nor make credibility determinations; rather, the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Wilson v. Myers,* 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact .")

### ARGUMENT

### Plaintiffs' claims for breach of contract and declaratory judgment.

Plaintiffs are not entitled to summary judgment on their claims for breach of contract and declaratory judgment. As stated above, Paragraph 11 of the Pledge Agreement provides for a number of rights the buyer must or may forfeit to the sellers upon default. Because such provision induces forfeiture upon breach, it should be declared void as a matter of law.

A forfeiture clause such as that found in Paragraph 11 of the Pledge Agreement is a contractual provision stating that, under certain circumstances, one party must forfeit something to the other. Black's Law Dictionary (8th ed. 2004). Forfeiture clauses are often held to be void. *Id.* Courts disfavor, even abhor forfeiture clauses. 37 C.J.S. Forfeitures § 1. Forfeitures are considered harsh, oppressive, odious, penal, in nature, and to be avoided when possible. *Id.*

Whether a forfeiture provision of a contract operates as a penalty or liquidated damages provision is a question of law, not a question of fact. *Wandler v. Lewis,* 567 N.W.2d 377, 382-383, 1997 SD 98, 21-22 (South Dakota 1997). A forfeiture clause that operates as a penalty, and not as liquidated damages, is generally unenforceable *Id.* While the law affords contracting parties the utmost freedom to bind themselves as they see fit, *See, e.g.* Williston on Contracts, *Interpretation and Construction of Contracts:*

*Introduction*, § 30:9, generally, a party to a contract cannot be penalized for its desire to exercise its option to be free from contract.

A read of Paragraph 11 of the Pledge Agreement reveals that it is a penalty provision, rather than a liquidated damages provision, as the remedies listed in Paragraph 11 do not operate to return the parties to the status quo, as if the parties had never agreed to the terms of the contract. Instead, the provision provides that the sellers not only have the right to declare all indebtedness owed the sellers immediately due and payable, but the sellers also may also assume all ownership and rights of control over the Pledged Stock and other Collateral.

In addition, Paragraph 12 of the Pledge Agreement explicitly states that all of the sellers' rights and remedies shall be cumulative and may be exercised singularly or concurrently. It is obvious that the language of Paragraphs 11 and 12 is one-sided and designed to benefit the sellers and penalize the buyer if the buyer elects to default and breach the contract. The remedies outlined in these paragraphs are overly harsh and unreasonable. These provisions should thus not be enforced, and, indeed, operate to invalidate the entire contract.

Additionally, as will be discussed in more detail below, the deposition testimony of Jay Stollenwerk, Wellington's 30(b)(6) representative, creates a factual issue with regard to Plaintiffs' claims and therefore justifies the denial of Plaintiffs' Motion.

Moreover, counsel for Wellington in this action has not been able to communicate with Frank Amodeo, the sole officer and director of Wellington, nor has he been able to be deposed in this matter, due to the reasons set forth in Filing Nos. 79

and 90.² *See also* Filing Nos. 97 and 98.  As such, not only is counsel for Wellington prejudiced in responding to Plaintiffs' instant Motion without the benefit of communication with Mr. Amodeo, but discovery also has not been completed, thus making summary judgment in Plaintiffs' favor in appropriate at this time.

In light of the foregoing, Plaintiffs are entitled to neither a summary judgment that Wellington breached the terms of the Pledge Agreement, nor a declaratory judgment that Plaintiffs hold all interest, rights, and title to Alliance.

**Wellington's counterclaims.**

Plaintiffs claim that they are entitled to summary judgment in their favor and against Wellington on Wellington's counterclaims asserted against them.  However, the initial burden of Plaintiffs, as the moving party, to show that the record does not disclose a genuine dispute on a material fact, has not been met.

Wellington, in its Counterclaims, has asserted causes of action for breach of contract, tortious interference with a business relationship, breach of duty of good faith and fair dealing, fraud, conversion, rescission, and declaratory relief.  As a result of Plaintiffs' conduct as alleged by Wellington in its counterclaims, it has alleged that it is entitled to certain indemnities, including offset, among other remedies.

Jay Stollenwerk was designated as Wellington's 30(b)(6) witness, and gave a deposition in this matter in Omaha on February 6, 2008.  See Defendant's Index of Evidence in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1A".  With regard to Wellington's allegation in Paragraph 10 of its Counterclaim that "Counter-

---

² The documentary evidence contained in Filing Nos. 79 and 90 and submitted to this Court has been filed under Seal.  As such, this evidence, while being referred to herein and asked to be considered by the Court in opposition to Plaintiff's Motion for Summary Judgment, will not be discussed in any substance.

Defendants made various representations and warranties to Wellington regarding Alliance, including but not limited to Alliance's gross revenues and net profits thereon," Mr. Stollenwerk testified in his deposition that Plaintiffs did, in fact, make various representations and warranties to Wellington regarding Alliance, including the representation that the 2006 gross revenues for Alliance were anticipated to be $70,000.00 with the net profits of $1.8 million, and that such representations were again made in the Stock Agreement on p. 31.  Defendant's Index of Evidence in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1A", Stollenwerk deposition, 67:16-25-73:1-25.

Wellington has alleged in Counts I, IV and VII of its Counterclaim that the foregoing representations were false, material, and constitutes a breach, and that Wellington is entitled to various remedies and damages as a result.  Mr. Stollenwerk provided substantiation of these allegations in his deposition that creates a factual issue and thus precludes summary judgment.  See Defendant's Index of Evidence in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1A", Stollenwerk deposition, 109:9-112:1-5; 190:18-25; 191:1-12; Exhibit 4 to Stollenwerk's deposition and testimony relating thereto at p. 122:7-25; 124:1-10).

With regard to Wellington's allegation in Paragraph 13 of its Counterclaim that, after the closing and during the time that Alliance was under Wellington's management, Mapes, acting in concert with another, called numerous Alliance customers, disparaging Wellington and Mirabilis and the financial condition of both, and further encouraging them to leave Alliance, Mr. Stollenwerk testified in his deposition that Mapes, did, in fact, make disparaging statements with negative connotations about

10016-1/57793                                                      9

Wellington/Mirabilis, and that such statements harmed Wellington, more specifically, in their relationship with Lumberman's, Alliance's workers' compensation carrier. See Defendant's Index of Evidence in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1A", Stollenwerk deposition, 90:9-25; 91:1-17; 100:9-25; 101:1-16; 119:17-25; 120:1-25; 121:4-21; 183:1-25; 184:1-9.

Counts II and III of Wellington's Complaint alleges that Wellington has been damaged by Mapes' conduct in this regard in that Wellington suffered a loss of operating capital and was unable to perform its business resulting in exposure to damages, attorney's fees, and costs, and that Lumbermen's made additional demands for premium in the amount of $548,000 as a direct result of its concerns regarding Wellington's cash position stemming from false and disparaging representations made Mapes. Because Mr. Stollenwerk's deposition testimony as above-cited creates a factual issue, Plaintiff's are not entitled to summary judgment on Wellington's counterclaims. Additionally, Mr. Stollenwerk's deposition testimony in this regard creates a factual issue on Plaintiffs' claims for breach of contract and declaratory judgment and necessitates denial of their summary judgment motion on these claims.

Further, Exhibits 4, 5 and 6 to Mr. Stollenwerk's deposition contain evidence of monies Wellington/or and their related entities paid to or for the benefit of Alliance, and create a factual issue with regard to Count VI of Wellington's Counterclaims and the damages it is seeking. See Defendant's Index of Evidence in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1A", Stollenwerk deposition,123:7-136:19; 148:9-24. Mr. Stollenwerk's deposition testimony as above-cited also creates a factual issue with regard to Wellington's claim for declaratory judgment. Because Mr.

Stollenwerk's deposition testimony and the exhibits attached thereto create genuine issues of fact to be resolved at trial, Plaintiff's Motion for Summary Judgment should be overruled in its entirety.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be denied.

RESPECTFULLY SUBMITTED this 15th day of September, 2008.

           WELLINGTON CAPITAL GROUP, INC.,
           Defendant.

By   */s/Elizabeth M. Callaghan*
    Michael J. Mooney, #12886
    Robert A. Mooney #21304
    Elizabeth M. Callaghan, #22238
    GROSS & WELCH, P.C., L.L.O.
    2120 South 72nd Street, Suite 1500
    Omaha, Nebraska 68124
    402-392-1500
    Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of September, 2008, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which sent notification of such filing upon all parties who filed an appearance or motion by electronic filing in this case:

John P. Passarelli
James M. Sulentic
1650 Farnam Street
Omaha, NE  68102
john.passarelli@kutakrock.com
james.sulentic@kutakrock.com

           */s/Elizabeth M. Callaghan*