IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL S. MAPES, MILTON PETERSEN IV, BRIAN LEICHNER, DAVID MOHR and DAVID STADING,<br><br>    Plaintiffs,<br><br>    v.<br><br>WELLINGTON CAPITAL GROUP, INC.,<br><br>    Defendant. | No. 8:07-CV-77 |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR SANCTIONS**

Prepared and submitted by:

John P. Passarelli #16018
James M. Sulentic #19610
Kutak Rock LLP
1650 Farnam Street
Omaha, NE  68102-2186
(402) 346-6000

ATTORNEYS FOR MICHAEL S. MAPES, MILTON PETERSEN IV,
BRIAN LEICHNER, DAVID MOHR and DAVID STADING

4845-2979-8402.3

## I.  INTRODUCTION

The question before the Court is whether Wellington's counterclaims should be dismissed as a sanction for Wellington's actions (or lack thereof) in this litigation.  The law is clear:  Rule 37(b) clearly and unambiguously on its face provides for the dismissal of claims against a party who fails to comply with a discovery order.

The material facts are not in dispute.  On two separate occasions, this Court specifically ordered Wellington to make its sole officer, director, employee, and shareholder, Frank L. Amodeo, available for deposition.  Amodeo refused and failed to appear in either instance.  In fact, in response to the Court's most recent Order, Wellington neglected to move to quash the deposition, seek a protective order, or otherwise notify the Court in any manner that it was refusing to comply with its Order.  Rather, Wellington brazenly thumbed its proverbial nose at this Court's authority and simply sent an e-mail to opposing counsel at the eleventh hour indicating Amodeo would not show up.  Wellington specifically refused to provide the reason for Amodeo's absence and did not even attempt to offer any legal justification for ignoring this Court's Order.  Nor did Wellington provide any indication that Amodeo would be made available at any time.

Wellington now asserts this Court lacks the authority to issue sanctions because its Nebraska counsel was allegedly ignorant of the latest in a long line of excuses for failing to comply with Court orders.  Claimed ignorance by members of this bar signing pleadings on behalf of a client who willfully disobeys Court orders does not constitute the "substantial justification" Wellington is required to prove in order to avoid sanctions.  Wellington's own motion papers are remarkably candid and instructive on this issue.  Wellington's Nebraska counsel warned Wellington that sanctions may be awarded for failing to comply with the Court's

Order.  Plaintiffs respectfully submit that the record evidence placed before this Court demands precisely this result.

## II.  ARGUMENT

A. **Rule 37 Broadly Authorizes This Court To Sanction Wellington and Dismiss Wellington's Counterclaim**

As fully set forth in Plaintiffs' Opening Brief, "Rule 37 sanctions are to be applied diligently" upon a party who fails to obey an order to provide discovery.  *In re Stauffer Seeds, Inc.*, 817 F.2d 47, 49 (8th Cir. 1987); Fed. R. Civ. P. 37(b)(2)(A).  It is beyond dispute, and Wellington had no choice but to acknowledge that dismissal of an action with prejudice is among the sanctions expressly authorized by Rule 37.  Fed. R. Civ. P. 37(b)(2)(A)(v); Wellington Brief at 3.  Rule 37(d) further provides on its face that reasonable expenses, including attorneys' fees, may be awarded as a sanction.  In assessing whether to award sanctions under Rule 37, it is well-settled that the court must consider whether the party has established "substantial justification" for discovery violations.  As Wellington readily admits, "[t]he burden of establishing substantial justification is on the party being sanctioned."  Wellington Brief at 3 (*citing Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994)).  *See also Thurber v. Nebraska*, No. 4:06CV3174, 2008 WL 704211, at *1 (D. Neb. March 7, 2008) (J. Gossett) ("Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure.  The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosure.").

   1. *Wellington Has Failed to Meet Its Burden of Proving "Substantial Justification"*

The parties agree Rule 37(b)(2) requires that any sanction imposed must be "just" and that "[w]illfulness, bad faith, or fault determines the severity of sanctions when [a] party fails to appear for deposition."  Wellington Brief at 3-4.  Wellington claims "courts have found

'substantial justification' for nonattendance [at a deposition] on the basis of the deponent's serious illness" and quote the case of *Hyde & Drath v. Baker*, 24 F.3d 1162, 1173 (9th Cir. 1994).  Curiously however, in *Hyde & Drath* the Court of Appeals for the Ninth Circuit "<u>affirm[ed]</u> the dismissal of the complaint because appellants *were at fault in failing to attend the scheduled depositions*." *Hyde & Drath*, 24 F.3d at 1173 (emphasis added).  The Ninth Circuit determined defendant Mr. L.K. K'ung "was excused from attending the depositions for health reasons . . . [and] he subsequently died of brain cancer," but the court "c[ould] not conclude that each of the appellant corporations was substantially justified in failing to attend the depositions." *Id*. at 1171.

Remarkably, Wellington also refers the Court to *Signer v. Pimkova*, No. 05-cv-02039-REB-MJW, 2007 WL 1058578 (D. Colo. April 6, 2007), in its discussion of willfulness and bad faith for the proposition that sanctions were not justified where a deponent and "his eleven-year-old son were both hospitalized after they fell through the ice of Lake Ontario just one day prior to the date scheduled for his deposition." Wellington Brief at 5.  As the *Signer* Court determined, "[t]hese circumstances are the *antithesis of willfulness*." *Signer v. Pimkova*, 2007 WL 1058578, at *1.  Wellington's actions could not be more factually distinguishable from *Singer* and *Hyde & Drath* as the discussion below highlights.

Wellington claims "there is ample evidence before this Court establishing that Mr. Amodeo's conduct in this matter was not the result of willful disobedience, but, rather, was the result of a health condition beyond his control." Wellington Brief at 5.  This self-serving statement is simply inconsistent with Wellington's conduct throughout this entire litigation.  On April 18, 2007, Wellington filed a number of counterclaims, including serious and disruptive

claims such as fraud, seeking to avail itself of this Court's authority and assistance. Since that time, Wellington has done virtually nothing to progress its case forward or pursue its claims.

Since December 2007, Wellington has thrown out a number of excuses in support of its scheme to avoid having Amodeo be deposed. Plaintiffs issued their first notice of deposition on December 12, 2007. Filing No. 28. On December 27, 2007, Wellington motioned to quash Amodeo's deposition claiming as its first excuse that the date was "inadequate in light of the holidays and, further, due to the fact that the witnesses sought to be deposed are located in Florida and travel arrangements need to be made." Filing No. 30, ¶ 8-9. The obvious implication was that Amodeo would be made available. Magistrate Judge Thalken ordered that "[t]he [P]laintiffs may notice and take the depositions of . . . Frank Amodeo . . . between February 1, 2008 and February 12, 2008." Filing No. 32. In compliance, Plaintiffs noticed Amodeo for deposition on January 25, 2008. Filing No. 36.

Wellington filed its second motion to quash on February 1, 2008, eleven days before the deposition, offering an entirely different excuse, this time claiming Amodeo was not a party to the action and "may not simply be noticed for . . . deposition[]" because "a valid subpoena must be raised." Filing No. 40. Judge Thalken disagreed and ordered Wellington to produce Amodeo for deposition in Omaha, Nebraska, as a sanction. Filing No. 48. On appeal, Judge Bataillon affirmed Judge Thalken's order, dismissed Wellington's appeal and ordered Wellington to "make Mr. Amodeo available for deposition upon notice of the plaintiffs within thirty days of the date of this [O]rder." Filing No. 64.

Again, in compliance with this Court's Order, Plaintiffs noticed Amodeo for deposition and, at the request of Wellington's counsel, Plaintiffs agreed to set the deposition for May 30, 2008. Wellington's counsel agreed and acknowledged Amodeo would be available on that date.

However, less than twenty-four hours before the deposition was scheduled to commence, Wellington's counsel sent an email to Plaintiffs' counsel that Amodeo would not be attending the deposition the next day. *See* Filing No. 68; Filing No. 73, Att. 7 (Ex. F, E-mail correspondence from Elizabeth M. Callaghan). Wellington refused to provide any justification or indicate in any fashion that Amodeo would ever be made available. *Id*. More importantly, Wellington did not seek any form of relief from the Court, or even notify the Court formally or informally that Amodeo would not be produced for deposition. Rather, Wellington challenged Plaintiffs to file a motion for sanctions submitting that Amodeo and his personal counsel would defend such a motion and provide the Court with a legal basis at that time. *Id*.

It was not until July 15, 2008, one and a half months after Amodeo failed to appear for his Court-ordered deposition, that Wellington asserted a motion to stay these proceedings alleging that "Amodeo, the sole officer and director of Wellington, has been unable to either communicate with counsel in this matter or assist counsel in their defense of the instant action." Filing No. 76. Wellington offered neither the Court nor Plaintiffs a "valid legal reason" why Amodeo failed to attend his Court-ordered deposition and merely proffered a newspaper article and court documents indicating Amodeo was reportedly *undergoing* competency proceedings. *See* Filing No. 79 (sealed in part). Such actions fall far short of "substantially justifying" Wellington's refusal to comply with Court orders.

Wellington now claims "the evidence filed under seal in this case . . . clearly establishes that Mr. Amodeo has been diagnosed with and has been battling a serious mental condition *for some years now*, and that he has been under a doctor's care for the same, *up to and including May of 2008, the month his deposition was scheduled to take place*." Wellington Brief at 5 (emphasis added). Astonishingly, Wellington makes this representation despite its counsel's

correspondence on May 21, 2008 that Amodeo <u>could be deposed</u> on May 30, 2008.[1]  Filing No. 73, Att. 6 (Ex. E, E-mail correspondence with Robert A. Mooney).

Wellington attempts to rationalize this distinction with its submission that "at the time Mr. Amodeo's deposition was cancelled on May 29, 2008, a valid legal basis did, indeed, exist for his ability to attend his deposition.  **Unfortunately, counsel for Defendant were [sic] not made privy to the legal basis at that time, but were assured it would be provided at a later date.**"  Wellington Brief at 6 (emphasis added).  Wellington's statement is without merit because the balance of Wellington's motion papers suggests Amodeo never intended to be deposed on May 30, 2008.  In her affidavit, Ms. Callaghan, Wellington's counsel, states she received a phone call *on May 29, 2008* from a person making Amodeo's flight and hotel arrangements and "researching flights."  Filing No. 98, Exhibit 2, Affidavit of Elizabeth M. Callaghan ¶ 6. According to Ms. Callaghan, she "was of the belief that Mr. Amodeo would be arriving in Omaha later that evening, and relayed the same to co-counsel in [her] office."  *Id*. at ¶ 6.  Taking this assertion as true, until May 29, 2008, Amodeo or Wellington had made no travel arrangements for a May 30, 2008 deposition to begin at 9:00 A.M. Central Standard Time.

This statement also shockingly suggests Wellington's counsel intended to defend a deposition of their client's sole officer, director, and shareholder (not to mention the only person who supposedly had knowledge concerning Wellington's counterclaims) without any allowance for witness preparation.  This statement directly contravenes Wellington's basis for seeking a protective order to stay enforcement of Judge Thalken's order requiring Amodeo to be deposed in Omaha:

---

[1] It is also worth noting that despite Wellington's claims of Amodeo's "serious mental condition for some years now and that he has been under a doctor's care for the same," Wellington's counsel reassured Plaintiffs' counsel on November 12, 2007 "that Frank Amodeo will be attending the mediation" and confirmed Amodeo had the date of December 18, 2007 available for mediation.  Exhibits A & B (Filing No. 44, Attachment 2).  Curiously, Amodeo also cancelled his attendance at the mediation at the last minute.  *See* Exhibit E (Filing No. 44, Attachment 2).

> Given the pending appeal and the pending nature of [Wellington's] request for this Court to stay enforcement of its earlier Order, it would be unfair and inequitable to force a non-party and director of Wellington to bear the cost of flying to Omaha for his deposition at Plaintiffs' sole discretion. *Moreover, given counsels' scheduling conflicts, it is oppressive and unfair to expect an attorney unfamiliar with the case to prepare Mr. Amodeo for his deposition and to defend the deposition*."

Exhibit No. 58, ¶ 3 (emphasis added).

Wellington's conduct, contradictions and inconsistencies throughout this case prove Amodeo's alleged incapacity was never the manifest reason for Wellington's non-compliance with multiple Court orders. Rather, Wellington's conduct demonstrates a continued pattern of contumacy that warrants sanctions in the form of dismissal of Wellington's counterclaim.

**B.    Wellington Ignored the Federal Rules of Civil Procedure**

As the discussion above plainly demonstrates, there was no legitimate basis or "substantial justification" for Amodeo's failure to comply with this Court's discovery orders. Assuming, for the sake of argument only, that there was a legitimate basis, Wellington's intentional and flagrant failure to notify the Court and seek the appropriate relief in and of itself warrants the imposition of sanctions.

The Federal Rules of Civil Procedure, which Wellington clearly chose not to follow, provide a mechanism and procedure for addressing legitimate situations. Rule 26 of the Federal Rules of Civil Procedure specifically allows for a protective order to protect a party or witness from unreasonable or invasive discovery requests. This Rule specifically sets forth the procedure a party must follow for lawful issuance of a protective order. Despite this Court's order requiring Amodeo to appear in Omaha to be deposed, Wellington chose not to notify the Court and never sought a protective order. Instead, Wellington simply e-mailed Plaintiffs' counsel and refused to provide any reason for Wellington's noncompliance with the Court's Order. The content of Wellington's counsel's e-mail alleged that a valid legal basis existed as of

4845-2979-8402.3                                      8

May 29, 2008, but such basis would not be made known until Plaintiffs asserted this Motion for Sanctions.  *See* Filing No. 68; Filing No. 73, Att. 7 (Ex. F, E-mail correspondence from Elizabeth M. Callaghan).  It is critical to note that Wellington did not seek a protective order even after June 30, 2008 when Wellington's counsel remarkably contends it learned for the first time of Amodeo's psychiatric treatment and pending guardianship proceeding in Florida. Wellington Brief at 6; Filing No. 98, Mooney Aff. ¶ 10; Callaghan Aff. ¶ 9.  In other words, neither the authority of this Court and its direct orders nor the Federal Rules of Civil Procedure provided sufficient motivation for Wellington to provide notice of or seek relief for violating this Court's Order.  Rather, Wellington only responded when faced with a motion for sanctions.  This conclusion is inescapable.

Wellington's approach to the Court's Order regarding Amodeo's deposition is not an isolated incident and is consistent with Wellington's conduct throughout litigation.  By way of example only, Wellington failed and refused for a period of nine months to identify its officers, directors, and shareholders in response to Plaintiffs' discovery, thereby necessitating Court intervention.[2]  Wellington has also proffered a variety of ever-changing excuses with every motion to quash Amodeo's deposition.  This pattern and Wellington's failure to follow the procedure necessary to invoke the Court's assistance further demonstrates Wellington's willfulness and is further support for the award of sanctions.

C.   **Wellington Failed to Carry its Burden of Establishing a Legitimate, Substantial Justification for Ignoring this Court's Order**

Wellington's "evidence" offered in support of its Opposition Brief and its Motion to Stay (Filing No. 76) suggests nothing more than Amodeo was currently undergoing pending

---

[2] It is difficult to understand how Wellington could have taken such an extended period of time to answer the most basic and fundamental corporate governance questions.  Given that Amodeo turned out to be Wellington's only officer, director, shareholder and chief decisionmaker, the passage of nine months supports the position that Wellington was not legitimately pursuing its claims and progressing the litigation.

4845-2979-8402.3                                         9

competency proceedings. With its now sealed submissions, Wellington neglected to include any qualifications or information so that this Court might assess the credibility of the statements offered. Such assessments fail to the meet the evidentiary burden imposed on Wellington as they are based on hearsay, double hearsay, and triple hearsay and violate the indicia of reliability standard for expert testimony. Moreover, any public record of incapacity proceedings in Florida have no direct bearing as to Amodeo's incompetency in this action. *See Holton v. State*, – S.W.3d –, 2003 WL 24314330, at *9 (Tenn. Feb. 2, 2006) ("Although the petition made reference to mental competency hearings that are ongoing in Reid's separate post-conviction proceedings in Davidson County, Tennessee, those records are not part of this record and, in any event, do not establish a *prima facie* case of Reid's present incompetency in this action").

Even if this Court is inclined to relax the evidentiary burden, Plaintiffs respectfully refers the Court to a "Joint Motion for Continuance of Arraignment" filed in United States District Court for the Middle District of Florida, criminal case number 6:08-cr-176. Sulentic Aff. ¶ 2, Exhibit A. This motion contains the following statement: "[t]he Defendant [Amodeo], has been seen by Jeffrey Danziger, M.D.[3] who had determined that the Defendant is competent to stand trial." Sulentic Aff. ¶ 3, Exhibit A. Despite Wellington's claim that "counsel for Wellington was not aware of the reason for Mr. Amodeo's inability to attend his deposition," Plaintiffs submit that they able to garnish much information about Amodeo from lawyers involved in Amodeo's other legal proceedings and from public records.

**D.     The Willful Deception Perpetrated on This Court Warrants Dismissal of a Suspect Counterclaim**

Wellington's counsel effectively concedes the appropriateness of sanctions by acknowledging it specifically warned its client of the ramifications of a motion for sanctions,

---

[3] *Compare* Filing No. 79 (sealed in part).

"including a request to dismiss Wellington's counterclaims." Filing No. 98, Mooney Aff. ¶ 5. As a preliminary matter, Wellington's claim of ignorance fails because it is well established that "the conduct of an attorney is imputed to his client." *S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998); *see United States v. Cirami*, 563 F.2d 26, 34 (2d Cir. 1977) ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.").

As sole officer, director, and shareholder of Wellington, Amodeo is arguably the only person that can speak for Wellington with respect to the claims and, in particular, counterclaims in the present litigation. Jay Stollenwork concedes in his deposition that Amodeo was the chief decision maker for Wellington Capital during 2003 through 2008 and that Stollenwork received all his information concerning the Alliance transaction from Amodeo. Filing No. 73, Att. 2 (Stollenwork Dep. 30:19-31:4; 32:3-6, 35:25-36:6).

The counterclaims at issue in this case had to be both properly investigated and the facts fully developed by Amodeo, the person most knowledgeable concerning the claims, in order for Wellington to lawfully assert a counterclaim against Plaintiffs. This is especially relevant given the burden of proof associated with Wellington's fraud claims against Plaintiffs. Accepting as true Wellington's statement that "Amodeo has been diagnosed with and has been battling a serious mental condition for some years now" means significant questions exist regarding the validity of Wellington's counterclaim.[4] *See* Wellington's Brief at 5.

Equally disconcerting is the fact Wellington's attorneys are submitting and signing pleadings on behalf of Wellington in this Court when counsel admits it has only had conversations with Aaron Bates, Wellington's counsel in Florida, "and a person identifying

---

[4] Also at issue is a June 6, 2007 verification notarized and signed by Amodeo attesting he had read Wellington's answers to Plaintiffs' Interrogatories, that he knew "the contents thereof, and that from his information and belief, the same are true and correct as he verily believes." Exhibit E (Filing No. 44, Attachment 2).

himself as Frank Amodeo" for no longer than three minutes.  Filing No. 98, Mooney Aff. ¶ 3, Callaghan Aff. ¶ 3.  Wellington's counsel highlights this lack of communication by stating it has "no way of verifying whether the person on the call was actually Frank Amodeo."[5]  *Id.*  Notably, Wellington has not submitted any affidavits from Amodeo's criminal attorneys although Wellington's counsel communicates largely through Amodeo's criminal counsel and Wellington previously represented that if Plaintiffs brought this motion for sanctions, "[Amodeo] and his personal counsel will defend any such motion and provide the Court with the legal basis at that time" Filing No. 73, Att. 7 (Ex. F, E-mail correspondence from Elizabeth M. Callaghan).

### E.     This Court has Broad Discretion to Impose Default Judgment as an Appropriate and Warranted Sanction

Wellington cannot seek the protections of this Court by asserting a counterclaim alleging fraud and respond by ignoring Court orders.  This Court has the authority to sanction Wellington for its willful discovery violation and violation of Court-order.  *See Cooperative Finance Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1371 (N.D. Iowa 1996) ("Judge Jarvey entered an order on January 17, 1996, which, among other things, struck David Garst's counterclaim as a sanction for failure to make discovery, pursuant to Fed. R. Civ. P. 37(b)(2)(B) & (C), and for failure to comply with court orders, pursuant to Fed. R. Civ. P. 41(b)."); *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1332 (8th Cir. 1988) (entry of default judgment, or the dismissal or striking of a claim, as a sanction for failure to permit discovery is "only appropriate where there has been a clear record of delay or contumacious conduct."); *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (*quoting Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958) (entry of default judgment or dismissal should be a "rare judicial act," but is appropriate as a discovery sanction, under Fed. R. Civ. P.

---

[5] This conduct raises Rule 11.

37(b)(2)(C), when a party's failure to comply has been "due to . . . willfulness, bad faith, or any fault of [the party]."); *Paine, Webber, Jackson & Curtis, Inc. v. Inmobiliaria Melia de Puerto Rico, Inc.*, 543 F.2d 3 (C.A.N.Y. 1976) ("It was not an abuse of discretion for trial court to dismiss counterclaims and enter default judgment in favor of plaintiff as sanction for defendant's failure to comply with discovery orders, including failure to produce certain documents for over two years."); *Cannon Partners, Ltd. v. Cape Cod Biolab Corp.*, 225 F.R.D. 247, 250-51 (N.D.Cal. 2003) ("The sanction of dismissal and default judgment recommended by Magistrate Judge Zimmerman and under consideration here, however, is not a discovery sanction authorized by FRCP 37, but rather a sanction for plaintiff's ongoing refusal to obey orders of the court and its failure to prosecute pursuant to FRCP 41(b).").

### III.  CONCLUSION

This is not a case of Amodeo falling through ice the day prior to his deposition.  Amodeo, Wellington's sole officer and director, refused to appear for a deposition ordered by this Court.  Rather than seek a protective order, Wellington has encouraged this Motion for Sanctions and muddied the waters with suggestion concerning Amodeo's competency.  Wellington's conduct and the evidence before this Court show Amodeo never intended to be deposed and he holds little regard for this Court's sanctionable powers.  The game must come to an end and the Court must hold Wellington accountable for its willful behavior.  Amodeo's failure to appear for a Court-ordered deposition, a deposition that already stood as a sanction, was not substantially justified.  Dismissal of Wellington's counterclaim is appropriate and Plaintiffs' Motion for Sanctions should be granted.

Dated this 29th day of September, 2008.

        MICHAEL S. MAPES, MILTON
        PETERSEN IV, BRIAN LEICHNER,
        DAVID MOHR and DAVID STADING,
        Plaintiffs

    By s/ John P. Passarelli
        John P. Passarelli #16018
        James M. Sulentic #19610
        Kutak Rock LLP
        The Omaha Building
        1650 Farnam Street
        Omaha, NE  68102-2186
        (402) 346-6000

## CERTIFICATE OF SERVICE

    I hereby certify that on September 29, 2008 I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the following:

    Gross & Welch, P.C., L.L.O.
    Michael J. Mooney
    Robert A. Mooney
    Elizabeth M. Callaghan

    By  s/John P. Passarelli
        John P. Passarelli